```
 1  MICHAEL A. SWEET (SBN 184345)
    msweet@foxrothschild.com
 2  JACK PRAETZELLIS (SBN 267765)
    jpraetzellis@foxrothschild.com
 3  FOX ROTHSCHILD LLP
    345 California Street, Suite 2200
 4  San Francisco, CA 94104
    Telephone: 415.364.5540
 5  Facsimile: 415.391.4436

 6  Attorneys for TRUSTEE
    E. LYNN SCHOENMANN
 7
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No.: 13-32412 |
| WB COYLE,<br>AKA WILLIAM BERNARD COYLE, AKA<br>W.B. COYLE, | Chapter 7<br>**DECLARATION OF MICHAEL SWEET REGARDING WB COYLE'S COMPLI-ANCE WITH THE TERMS OF THE COURT'S ORDER [DKT. NO. 287]** |
| Debtor. | |
| | Honorable Hannah L. Blumenstiel |

I, Michael A. Sweet, declare as follows:

1. I am a partner with the law firm of Fox Rothschild LLP, counsel of record to E. Lynn Schoenmann, Trustee in Bankruptcy of the estate of the above Debtor. This Declaration is in support of the Trustee's Motion for Contempt Sanctions for Debtor's Failure to Comply with Order.

2. At the hearing on December 22, 2015 this court instructed Mr. Coyle to appear at his 2004 examination. The agreed date of the examination was January 6, 2016. Mr. Coyle did not appear on that date. He was allegedly out of town and unable to make it back to the area due to a storm. After some back-and-forth Mr. Coyle agreed to appear at my office on January 12, 2016.

3. This 2004 application was made last November in an attempt to assist chapter 7 trustee Milgrom's efforts to take control of the property at 2017 through 2021 Powell St., the equity in which appears to be one of the few assets in the Coyle bankruptcy case (the "Property").

4. The 2004 examination went forward on January 12, 2016. Mr. Coyle refused to answer any substantive questions, instead asserting his Fifth Amendment right against self-incrimination (the "Fifth"). In refusing to answer any of the substantive questions at his 2004 examination, Mr. Coyle provided no assistance in the efforts to take control of the Property and in fact continued in his campaign to obstruct efforts by the Trustees Milgrom and Schoenmann to recover assets on behalf of Coyle's creditors.

5. Mr. Coyle brought no documents with him to the 2004 examination. When asked about each of the items that he was required to produce pursuant to the 2004 application (which list is attached hereto as Exhibit A to Exhibit 1 for the courts convenience). Mr. Coyle took the Fifth as well.

6. Mr. Coyle specifically refused to testify as to the names of any of the occupants of the Property or to provide any contact information about those occupants.

7. Mr. Coyle refused to testify about the purported lease between the San Francisco Citizens Against Eviction and himself as agent for Daniel Horsted. A copy of the lease is attached hereto as Exhibit 2.

8. Mr. Coyle refused to authenticate any of the documents that were submitted with his two declarations in support of the motion to dismiss the Innocenti bankruptcy case. Instead he again invoked the Fifth.[1]

9. I specifically asked Mr. Coyle about his assertion in his declaration filed on December 31, 2015 in support of the Motion to Dismiss the Innocenti Bankruptcy Case that he purportedly transmitted 183 pages of documents to me on or about September 9, 2015 (since I never saw the documents and after seeing the Declaration reviewed my emails confirm that there was no indication that such transmission was made). In response to this question he invoked the Fifth.

---

[1] Although not before the Court in this matter, I believe Mr. Coyle's refusal to answer questions about these documents eviscerates their value as evidence in support of his mother's Motion to Dismiss the Innocenti Bankruptcy Case [N.D. Cal. Bankr. Case No. 15-30690, Dkt. No. 73].

10. When asked whether he had waived any attorney-client privilege he may have had with Mr. St. James Mr. Coyle invoked the Fifth.

11. I am informed and believe Mr. Coyle's assertion of the Fifth Amendment privilege is not proper. In fact, I believe that Coyle waived the privilege, to the extent it was applicable, by his filing of numerous declarations including the two in support of the Innocenti motion to dismiss. See Mitchell v. United States, 526 U.S. 314, 321 (1999) ("[A] witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. [Citation.] The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination,' [Citation.] 'The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry.' [Citation.]"). Furthermore, I am not aware of any pending or contemplated criminal actions against Mr. Coyle relating to the transactions and occurrences at issue.

12. Given Mr. Coyle's persistent refusal to provide meaningful information at his 2004 examination, the Trustee requests that this Court hold Mr. Coyle in contempt, that he be ordered to appear for a further 2004 Examination on a date certain at which he should be required to answer all questions put to him, and that he should be ordered to reimburse the estate for the costs and attorney's fees associated with the prior 2004 Examination, including court reporter costs.

I declare under penalty of perjury that the foregoing is true and correct, except as to those matters stated on information and belief, and as to those matters I am informed and believe them to be true, and that this Declaration was executed at San Francisco, California on January 14, 2016.

/s/Michael A. Sweet
Michael A. Sweet

# EXHIBIT 1

```
 1 │ MICHAEL A. SWEET (SBN 184345)
   │ msweet@foxrothschild.com
 2 │ JACK PRAETZELLIS (SBN 267765)
   │ jpraetzellis@foxrothschild.com
 3 │ FOX ROTHSCHILD LLP
   │ 345 California Street, Suite 2200
 4 │ San Francisco, CA 94104
   │ Telephone: 415.364.5540
 5 │ Facsimile:  415.391.4436
   │
 6 │ Attorneys for TRUSTEE
   │ E. LYNN SCHOENMANN
 7 │
 8 │                     UNITED STATES BANKRUPTCY COURT
 9 │                     NORTHERN DISTRICT OF CALIFORNIA
10 │                          SAN FRANCISCO DIVISION
11 │
12 │ In re                                    Case No. 13-32412
13 │ WB COYLE                                 Chapter 7
   │ AKA WILLIAM BERNARD COYLE
14 │ AKA W.B. COYLE,                          **TRUSTEE'S *EX PARTE* APPLICA-
   │                                          TION PURSUANT TO FEDERAL
15 │             Debtor.                      RULE OF BANKRUPTCY PROCE-
   │                                          DURE 2004 FOR ORDER REQUIRING
16 │                                          DEBTOR TO PROVIDE DOCUMENTS
   │                                          AND APPEAR FOR DEPOSITION**
17 │
   │                                          [No hearing required pursuant to B.L.R.
18 │                                            2004-1]
19 │                                          Judge: Honorable Hannah L. Blumenstiel
```

20    E. Lynn Schoenmann, Trustee of the Estate of the above-named Debtor, hereby applies *ex
21 parte* to the Court, pursuant to Bankruptcy Rule 2004(d), for the following:
22    1.   An order requiring the Debtor WB Coyle aka William Bernard Coyle aka W.B. Coyle
23 (the "Debtor") to produce the documents specified in **Exhibit A** attached hereto, at the offices of
24 Fox Rothschild LLP, 345 California Street, Suite 2200, San Francisco, California 94104, on Novem-
25 ber 24, 2015 at 10:00 a.m., or such other date as the parties agree.
26    2.   An order requiring the Debtor to appear for a deposition. The deposition shall take
27 place at the Offices of Fox Rothschild LLP, 345 California Street, Suite 2200, San Francisco, Cali-
28 fornia 94104 on November 25, 2015 at 10:00 a.m., or such other date as the parties agree.

The Trustee requires these materials to administer the Debtor's estate and to answer various questions that have arisen in both *Schoenmann v. Trifiletti, et al.* (Adv. Proc. No. 14-03144) and *In re Innocenti* (Bankr. No. 15-30690). The Trustee is attempting to cooperate with the Innocenti Trustee, Barry Milgrom, to sell the real property commonly known as 2017-2021 Powell Street, San Francisco, California. However, both Trustees require additional information and documents that are likely in the Debtor's possession.

WHEREFORE, the Trustee respectfully prays that an Order be entered directing the Debtor to produce documents identified in **Exhibit A** attached hereto on November 24, 2015 at 10:00 a.m. and appear for a deposition at the place stated above on November 25, 2015 at 10:00 a.m.

Dated: November 16, 2015     FOX ROTHSCHILD LLP`

By: */s/ Michael A. Sweet*
Michael A. Sweet
Attorneys for Trustee E. Lynn Schoenmann

# EXHIBIT A

## DOCUMENTS TO BE PRODUCED BY DEBTOR PURSUANT TO 2004 ORDER

1. Any and all leases for the real property commonly known as 2017-2021 Powell Street, San Francisco, California 94133 (the "Premises").

2. Any and all subleases for the Premises.

3. Any and all documents evidencing any tenant's right to occupy the Premises.

4. Any and all emails relating to or discussing the Premises.

5. Any and all texts relating to or discussing the Premises.

6. Any and all correspondence relating to or discussing the Premises.

7. An accounting stating each tenant of the Premise's: (a) rent payments relating to the Premises, including the date of payment, the amount of payment, and the names of the payee and payor from October 1, 2013 through November 1, 2015; (b) the month and year that each tenant moved into the Premises; (c) the first and last name of each of the tenant's roommate(s); (d) the month and year that each roommate moved into the Premises and, if applicable, moved out of the Premises from October 1, 2013 through the present; and (e) utilities payments (e.g. telephone, trash, internet, electricity, and gas) relating to the Premises, including the date of payment, the amount of payment, and the names of the payee and payor from October 1, 2013 through November 1, 2015.

8. All documents relating to rent payments made on the Premises.

EXHIBIT A

Case: 13-32412   Doc# 274   Filed: 11/16/15   Entered: 11/16/15 17:07:20   Page 3 of 3
Case: 13-32412   Doc# 289   Filed: 01/14/16   Entered: 01/14/16 15:34:54   Page 7 of 14

# EXHIBIT 2

# RESIDENTIAL TENANCY AGREEMENT

## 2017, 2019, & 2021 POWELL STREET, SAN FRANCISCO, CALIFORNIA

**PREMISES:** Darrel Horsted ("Owner"), rents to San Francisco Citizens Against Evictions (SFCAE) and its Members ("Tenant"), and Tenant hires 2017, 2019, & 2021 Powell Street, San Francisco, California ("Premises").

**TERM:** The initial term of this Agreement shall begin on November 1, 2012 and end on December 31, 2017 ("Initial Term").

After the Initial Term Tenant shall have the option to extend the term of this Agreement for a period of five (5) years ("First Extended Term"). Tenant shall provide written notice to Owner of its intent to exercise its option to extend the Initial Term of the Agreement any time before December 31, 2017.

After the First Extended Term Tenant shall have the option to extend the term of this Agreement for a period of five (5) years ("Second Extended Term"). Tenant shall provide written notice to Owner of its intent to exercise its option to extend the First Extended Term of the Agreement any time before December 31, 2022.

**RENT:** The initial base rent for the Premises shall be $5,217.90 per month. Owner's agent acknowledges receipt of pre-paid rent from Tenant through December 31, 2017. Beginning January 1, 2018 rent shall be due on the first of every month.

The monthly base rent for the First Extended Term shall be computed as follows: $5,217.90 plus all increases allowed under the San Francisco Rent Ordinance will be the new monthly rent beginning January 1, 2018 and shall remain fixed through December 31, 2022.

The monthly base rent for the Second Extended Term shall be computed as follows: The monthly base rent for the First Extended Term plus all increases allowed under the San Francisco Rent Ordinance will be the new monthly rent beginning January 1, 2023 and shall remain fixed through December 31, 2027.

Tenant may pre-pay rent at any time through the extended term of this Agreement. Tenant may also make rent payments in whole or in part directly to any lender with a loan secured by the property in lieu of payments to OWNER.

**SECURITY DEPOSIT:** Owner's agent acknowledges receipt of $7,000 ("Security Deposit") paid by Tenant to Landlord. The Security Deposit shall be refunded by Owner to Tenant or Tenant's designee upon the termination of this Agreement.

1

**USE / OCCUPANCY:** It is understood that the Premises is to be used by Tenant in any manner desired by Tenant allowed by law. Owner understands and acknowledges that Tenant is an unincorporated association comprised of many members both individual and entities and that each and every member shall be considered an "Original Occupant" of the Premises as defined under the San Francisco Rent Ordinance Section 6.14(a)(1) and have the same rights as though they were named tenants on this Agreement.

**ROOF:** Tenant shall have exclusive use of the roof. Owner shall not access the roof or allow any other persons access to the roof without prior written consent of Tenant.

**ASSIGNMENT AND SUBLETTING:** Tenant may assign or sublet the whole or any portion of the Premises without the consent of Owner.

**PROTECTED TENANT STATUS:** Owner acknowledges receipt of notice from Tenant that one or more members of TENANT is disabled within the meaning of Section 37.9(i)(1)(B)(i) of the San Francisco Rent Ordinance and has been disabled since the inception of the lease. Owner accepts Tenants representations of disability and shall not challenge Tenant's disabled status.

**PRIVACY:** Owner shall respect the privacy of Tenant. Tenant's privacy is a material consideration of this Agreement. Owner agrees to abide by the following:

A. **PHOTOS/VIDEOS:** Owner shall not photograph or take video inside the Premises.

B. **SIGNS:** Owner shall not affix or allow to be affixed ANY signs on or about the building for which the Premises is located. Tenant may place signs on or about the building that the Premises is located including the windows of the Premises, front gate, and entry area of the property that the Premises is located.

C. **OPEN HOUSES:** Under no circumstances shall Owner or Owner's agent hold an open house in connection with the sale of the property.

D. **KEYS / LOCKS:** Tenant may re-key or change the locks to the Premises at any time. Tenant has no obligation to provide Owner a copy of the keys to Premises. Owner is not permitted to re-key or change the locks to the Premises, tenant's storage area, or any common areas including the front gate without the written consent of the Tenant.

E. **ENTRY AND INSPECTION:** Owner hereby waives ALL his rights to enter the Premises pursuant to California Civil Code 1954 without Tenant's prior written consent except in the case of an emergency. An emergency shall only be defined as a threat of life.

2.

F. **LIQUIDATED DAMAGES:** By initialing this paragraph, Owner and Tenant agree that if Owner breaches any part of the Privacy paragraph of this Agreement, Tenant shall be entitled to liquidated damages in the amount of $25,000 for each breach.

Owner's Initials _JRL_   Tenant's Initials _____

**PETS:** Pets, dogs, cats, birds or other animals are allowed on or about the Premises.

**STORAGE:** Storage space described as: the rear two storage rooms in the basement of the property in which the Premises is located is hereby provided. Owner acknowledges that a portion of the base rent specified above is consideration for such storage spaces.

**PARKING:** Premises does not include parking. If at any time in the future a garage is constructed on the property Tenant shall have the right of use of one independent parking space. Tenant shall have the right to pick the parking space of Tenant's choice. Tenant shall have the exclusive use of the same square footage equal to Tenants two storage rooms reduced by the square footage of Tenants parking space. The rent amount shall not increase as a result of the addition of parking.

**UTILITIES:** Tenant shall pay directly for all utilities, services, and charges provided to the Premises EXCEPT those listed as follows: Water and Garbage.

**ALTERATIONS:** Tenant MAY redecorate, paint, refinish floors or otherwise alter the premises in any way without Owner's approval.

**DAMAGES TO PREMISES:** If the Premises are so damaged by fire, flood, or by any other cause which renders it uninhabitable during the term of this Agreement, Owner shall refund to Tenant all pre-paid rent. The amount of pre-paid rent to be refunded to Tenant shall be calculated as follows: $3,500 multiplied by the number of months or fraction thereof that the apartment is uninhabitable through December 31, 2017.

**TERMINATION:** After the expiration of the original term, plus any extended term, of this Agreement either Owner or Tenant may terminate the tenancy created by this Agreement by giving at least two hundred seventy days (270) prior written notice to the other party. Notice by Owner may not be given until such time that the Term of this Agreement, plus any extended term, has expired.

**OWNER-RELATIVE MOVE IN / ELLIS ACT:**

A. **OWNER MOVE IN:** Owner shall not seek to recover possession of the Premises for Owners use or occupancy as his or her principal residence or for the occupancy of Owners grandparents, grandchildren, parents, children, brother or sister, or the Owners spouse or the spouses of such relations as their principal place of residency

3

pursuant to San Francisco Rent Ordinance Section 37.9(a)(8), prior to December 31, 2027.

B. **ELLIS ACT:** Owner shall not withdraw from rent or lease all the rental units contained in the building for which the Premises is located pursuant to San Francisco Rent Ordinance Section 37.9(a)(13), prior to December 31, 2027.

Should the Owner violate this paragraph of the Agreement or attempt to evict Tenant for any reason (except non-payment of rent after December 31, 2017) prior to December 31, 2027 it is hereby stipulated that in addition to all statutory payments required under the San Francisco Rent Ordinance Owner shall pay Tenant liquidated damages computed as follows:

> The present value of (the difference between the rent at the time of the eviction notice and the current fair market value rent) over the remaining life expectancy of the youngest member of Tenant. For the purposes of this computation Owner and Tenant stipulate that the age of the youngest member of Tenant is eighteen years old. Payment shall be payable to Tenant by Owner at the time the eviction notice is delivered to the Tenant.

**BANKRUPTCY RESTRICTIONS:** In conjunction with the execution of this Agreement Tenant has paid a substantial sum of money to Owner representing a security deposit and pre-paid rent. In consideration of the substantial amount of pre-paid rent Tenant has paid to Owner, Owner hereby irrevocably transfers the right for Owner to voluntarily file for Bankruptcy to Tenant. Therefore, Owner shall not voluntary file for Bankruptcy without the prior written consent of Tenant. The provisions of this paragraph shall only apply if Owner is not a natural person (individual).

**RESTRICTED SALE OF PREMISES:** Owner may transfer title to the Premises only as provided in this section:

A. **Notice of Intended Sale:** If a sale is intended Owner shall provide to Tenant a "Notice of Intended Sale" stating (i) the asking price, terms and conditions (including financing) and (ii) the amount of sales commission, if any, which shall be paid in the event of a sale by a real estate agent.

B. **Initial Right to Purchase:** If a sale is intended, Tenant shall have the right to purchase Owner's interest on the terms and conditions stated in the Notice of Intended sale, except that the price and cash down payment required shall be reduced by the amount of (i) the amount of the intended sales commission and (ii) the amount of outstanding pre-paid rent. Tenant shall exercise this right by (i) Promptly providing Notice to Owner, or Owner's agent, its tentative intent to purchase (a "Notice of Tentative Intent") and (ii) within 21 calendar days of the Effective date of the Notice of Tentative Intent, providing a second Notice to Owner

4

reaffirming its intent to purchase (a "Notice of Final Intent"). The Notice of Final Intent shall be binding. Tenant shall complete the purchase on the terms and conditions stated in the Notice of Final Intent within (90) calendar days following the date that Owner provides Tenant a written verification from Fidelity National Title Company that there are no restrictions for Owner to transfer title to the property to Tenant except for liens and/or encumbrances that will be paid off through close of escrow.

C. **Additional Right to Purchase:** Before accepting any purchase offer, Owner shall provide a copy of the offer to Tenant. If the offer is one percent (1%) or more lower than the original asking price, Tenant shall have the right to purchase Owner's interest on the terms and conditions stated in the purchase offer, except that the price and cash down payment shall be reduced by (i) the amount of the intended sales commission and (ii) the amount of outstanding pre-paid rent. Tenant shall exercise this right by (i) Promptly providing Notice to Owner, or Owner's agent, its tentative intent to purchase (a "Notice of Tentative Intent") and (ii) within 21 calendar days of the Effective date of the Notice of Tentative Intent, providing a second Notice to Owner reaffirming its intent to purchase (a "Notice of Final Intent"). The Notice of Final Intent shall be binding. Tenant shall complete the purchase on the terms and conditions stated in the Notice of Final Intent within (90) calendar days following the date that Owner provides Tenant a written verification from Fidelity National Title Company that there are no restrictions for Owner to transfer title to the property to Tenant except for liens and/or encumbrances that will be paid off through close of escrow.

D. **Title to the Premises:** Title to the Premises shall be defined as any interest in the property whether the entire interest or any fraction thereof.

**GENERAL:** The invalidity or partial invalidity of any provision of this Agreement shall not render the remainder of the Agreement invalid or unenforceable. This Agreement shall not be modified unless reduced to writing. This Agreement shall be binding upon and inure to the benefit of the parties' respective heirs, successors and assigns. Time is of the essence of this Agreement.

**NOTICES:**

A. **Notice to Owner:** Any notice or other communication to OWNER shall be given either personally or by USPS first class mail at the following address: P.O. Box 330220 San Francisco, CA 94133.

5

B. **Notice to Tenant:** Any notice or other communication to TENANT shall ONLY be delivered by USPS first class mail at the following address: 2017 Powell Street, San Francisco, CA 94133. If Tenant is represented by an attorney no notice is effective unless the notice is also delivered to the Tenant's attorney.

C. **Effective Date of Notice for Owner:** The "Effective Date" of a notice to the Owner shall be the date of personal delivery or three (3) calendar days after mailing.

D. **Effective Date of Notice for Tenant:** The "Effective Date" of a notice to the Tenant shall be two (2) calendar days after both Tenant and Tenant's attorney signs a document acknowledging receipt of the notice (i.e., certified mail signature required).

**WAIVER:** Except as explicitly provided in this Agreement, a provision of the Agreement shall be waived (i) by TENANT, only when a written document explicitly describing the waiver is signed by both the TENANT and an attorney representing TENANT, and by OWNER, only when a written document explicitly describing the waiver is signed by OWNER.

**ATTORNEY FEES:** This Agreement does **NOT** provide for attorney fees.

**ENTIRE AGREEMENT:** The foregoing constitutes the entire Agreement between the parties and may be modified only in writing signed by both OWNER and TENANT.

BY SIGNING BELOW TENANT AND OWNER HEREBY ACKNOWLEDGES READING AND UNDERSTANDING THE TERMS OF THIS AGREEMENT.

Executed this 26th day of October 2012.

_____
By WB Coyle, agent for Darrel Horsted – OWNER

_____
SAN FRANCISCO CITIZENS AGAINST EVICTIONS (SFCAE) – TENANT

6